UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE E. LULE,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:15-cv-01631 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MARIE E. LULE AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Marie Lule asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny her applications for benefits. Because the ALJ erred in evaluating the medical record and failed to properly address Plaintiff's inability to communicate in English, the decision is **REMANDED** for further proceedings.

## PROCEDURAL HISTORY

Plaintiff filed her application for benefits on April 17, 2010, alleging disability beginning on October 1, 2009. (Doc. 9-3 at 26) The Social Security Administration denied Plaintiff's applications at both the initial level and upon reconsideration. (*See generally* Doc. 9-4) After requesting a hearing,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for her predessessor, Carolyn W. Colvin, as the defendant.

1

Plaintiff testified before an ALJ on April 8, 2014. (Doc. 9-3 at 39) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on May 30, 2014. (*Id.* at 23-32) The Appeals Council denied Plaintiff's request for review of the decision on August 25, 2015. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.    Relevant Medical Evidence**

Plaintiff was diagnosed with lupus in 2002 and chronic kidney disease as a result of the lupus in 2009, which caused her to be on dialysis for one year. (Doc. 9-10 at 97, 102) In 2010, she began treatment with Dr. Charles Boniske, who saw Plaintiff every three to four months. (*Id.* at 92)

In March 2011, Plaintiff visited the emergency room for "pain and swelling in the right foot and left hand/arm." (Doc. 9-8 at 17) On March 22, Plaintiff told Dr. Boniske that she had chronic fatigue, and said she was "getting itchy all over" though she did not have a rash. (*Id.*) Dr. Boniske noted Plaintiff had "kidney disease from lupus, membranous glomerulonephritis." (*Id.*) Dr. Boniske found Plaintiff did not have any neurological deficits and she had full range of motion in all joints. (*Id.*)

In June 2011, Plaintiff continued to complain of chronic fatigue, though it was not worsening. (Doc. 9-8 at 21) She told Dr. Boniske that she had pain in her wrists, which "hurt[] with lots of activities." (*Id.*)

Plaintiff told Dr. Boniske that her wrists still ached and her legs remained swollen in October 2011. (Doc. 9-8 at 19) Dr. Boniske observed that Plaintiff's wrists did not have gross synovitis, but her ankles were "slightly tender." (*Id.*) Dr. Boniske opined Plaintiff's lupus "look[ed] stable," and he hoped to "be able to reduce the steroids" prescription. (*Id.* at 20)

1   On December 20, 2011, Dr. Yang called Dr. Boniske and informed him that Plaintiff's "renal
2   disease was flaring" and he was going to "bump up" her prescription for predinisone. (Doc. 9-9 at 15)
3   Dr. Boniske noted Plaintiff's "main complaint was increased edema" in January 2012. (*Id.*) However,
4   Dr. Boniske did not find any edema in her extremities. (*Id.*) Plaintiff reported she did not have joint
5   pain at that time. (*Id.*)

6   In May 2012, Plaintiff told Dr. Boniske that she had "less swelling," though it was "worse at the
7   end of the day." (Doc. 9-8 at 13) She reported she had joint pain "in both wrists with housework,"
8   which she described as a "4" out of ten. (*Id.*) Dr. Boniske found Plaintiff's left wrist was "slightly
9   tender but no[t] inflamed," and her extremities had "+1 edema." (*Id.*) Because Plaintiff had more pain
10  in her wrists, Dr. Boniske added hydroxychloroquine to Plaintiff's prescriptions. (*Id.* at 13-14)

11  Dr. A Nasrabadi reviewed the medical record and completed a physical residual functional
12  capacity assessment on July 24, 2012. (Doc. 9-4 at 7-8) Dr. Nasrabadi opined Plaintiff was able to lift
13  and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for "[a]bout 6 hours in
14  an 8-hour workday," and sit for "[a]bout 6 hours in an 8-hour workday." (*Id.*) Dr. Nasrabadi did not
15  believe Plaintiff had any postural, manipulative, communicative or environmental limitations. (*Id.* at 8)

16  On September 25, 2012, Plaintiff told Dr. Boniske she had joint pain, weight gain, and
17  worsening fatigue. (Doc. 9-8 at 10) She described her pain as a "7" on a pain scale of 10. (*Id.*) Dr.
18  Boniske observed that Plaintiff had a "maculopapular rash over the upper chest wall-sun exposed area,"
19  and her extremities had "+2 edema." (*Id.*) Dr. Boniske also noted Plaintiff's creatinine levels "increased
20  0.9 to 1.3 from July to September," and opined hydroxychloroquine did not help. (*Id.* at 11)

21  On November 27, 2012, Dr. Boniske found Plaintiff had "trace edema." (Doc. 9-8 at 8)
22  Plaintiff stopped taking hydroxychloroquine, which Dr. Boniske believed "may have caused some
23  hyperpigmentation." (*Id.*)

24  Dr. J. Linder reviewed the medical evidence on February 20, 2013 and affirmed the decision of
25  Dr. Nasrabadi that Plaintiff was able to perform light work. (Doc. 9-4 at 24)

26  In March 2013, Plaintiff continued to have "trace edema" in her extremities. (Doc. 9-10 at
27  115). In addition, she had developed a "persistent rash on the scalp and neck," for which Dr. Boniske
28  prescribed a cream treatment. (*Id.* at 115-116) Dr. Boniske found Plaintiff had a full range of motion

4

in all joints. (*Id.* at 115)

In July 2013, Plaintiff told Dr. Boniske that she had "persistent swelling," and her wrists continued to hurt. (Doc. 9-10 at 113) Plaintiff had a rash on her arms, scalp, and neck, which she said was "bothersome," and that she planned to see a skin doctor. (*Id.*) Dr. Boniske observed that Plaintiff's "right wrist [was] slightly tender but overall the arthritis [was] under good control." (*Id.*) Dr. Boniske noted Plaintiff did "not feel that she can work – cannot stand long periods because of fatigue and weakness," and Plaintiff asked him to fill out a disability form. (*Id.* at 114)

Dr. Boniske completed a "Lupus (SLE) Medical Source Statement" on July 23, 2013. (Doc. 9-10 at 92-96) He indicated Plaintiff had a "[n]on-erosive arthritis involving pain in two or more peripheral joints," and also displayed tenderness in her wrists. (*Id.*) Dr. Boniske noted Plaintiff's lupus caused renal issues, hemolytic anemia, a positive antinuclear antibody test. (*Id.* at 92-93) In addition, he noted Plaintiff suffered from severe fatigue and malaise. (*Id.* at 93) According to Dr. Boniske, Plaintiff had moderate limitations with activities of daily living; moderate limitations in maintaining social functioning; and marked limitations with concentration, persistence and pace. (*Id.* at 93) He expected Plaintiff to be "off task" for 5% of the work day and noted she was "incapable of even 'low stress' work." (*Id.* at 96) Dr. Boniske opined Plaintiff could walk for five blocks without needing rest, sit for fifteen minutes at one time before needing to stand, and stand for an hour at one time. (*Id.* at 94) He believed Plaintiff would require unscheduled breaks in a workday "frequently." (*Id.*) Dr. Boniske indicated Plaintiff had postural restrictions and was limited to "occasionally" twisting, stooping, crouching, and climbing. (*Id.* at 95) In addition, he determined Plaintiff was required to avoid all exposure to extreme heat, high humidity, cigarette smoke, dust, and chemicals; and needed to avoid even moderate exposure to fumes, odors, and gases. (*Id.*)

In November 2013, Dr. Boniske observed that Plaintiff's lupus was "overall stable but [Plaintiff was] on a very large number of meds." (Doc. 9-10 at 111) In addition, he opined Plaintiff's "renal status [was] stable and edema… better controlled." (*Id.*) Plaintiff reported her legs "on occasional" felt heavy, though Dr. Boniske observed her swelling was "not…bad" on examination. (*Id.*)

In February 2014, Plaintiff told Dr. Boniske that she felt "more swollen in the legs, worse at the end of the days." (Doc. 9-10 at 109) Dr. Boniske found her extremities were at a "+1 edema" level.

(*Id.*)  In addition, Plaintiff said she was using Plaquenil for her skin, and there was "no recurrence of the rash." (*Id.*)  Dr. Boniske did not find any focal deficits upon the neurological examination, and there was no evidence of synovitis.  (*Id.*)

In March 2014, Plaintiff told Dr. Evelyn Gomez that she had leg edema for two months, as well as joint pain.  (Doc. 9-10 at 97)  Dr. Gomez determined Plaintiff's range of motion, strength, and neurologic examinations were normal.  (*Id.* at 99)  In addition, based upon the lab results, she found Plaintiff's "[k]idney function [was] improving." (*Id.* at 101)

**B.     Administrative Hearing Testimony**

Plaintiff testified with the assistance of an interpreter at the hearing on April 8, 2014.  (Doc. 9-3 at 39)  She reported she received a seventh-grade education in Mexico, and she did not understand English.  (*Id.* at 42)

She stated she did household chores but needed help with cooking or microwaving food. (Doc. 9-3 at 42)  Plaintiff reported she would go shopping with her husband, but she "[h]ardly ever" did social activities such as attending church or visiting friends or family.  (*Id.*)  She said she did not drive, and her husband took her to appointments.  (*Id.* at 41-42)

Plaintiff testified that on a typical day, she would wake up about 7:00 a.m. and help her daughter get ready for school.  (Doc. 9-3 at 43)  She stated she would then "lay down for a while again," and upon arising the second time would have breakfast and take medications.  (*Id.*)  She said she then needed to "rest for a while again," after which she would "do a little bit" of housework if she felt good that day.  (*Id.*)

She reported that with lupus, she sometimes felt "very tired, sometimes okay." (Doc. 9-3 at 45)  Plaintiff explained she could not be in the sun because she would get spots on her skin.  (*Id.*)  She stated lupus also caused "tingling in [her] feet," pain in her joints, and swelling.  (*Id.*)  Plaintiff said the medication "sometimes" helped with her symptoms.  (*Id.*)  Plaintiff reported she also had asthma, and used an inhaler as needed.  (*Id.* at 44-45)  In addition, she said she had arthritis, problems with her stomach, and pain in her back; and she was taking Tramadol for the pain.  (*Id.*)

She estimated that she could sit "15 to 20 minutes" at one time, and walk three to four blocks. (Doc. 9-3 at 47)  She believed she could lift "eight to 10" pounds.  (*Id.*)  Plaintiff said she had

difficulty bending over, such as with putting on shoes and socks, and if she was to drop something she would have to squat down to pick up the item rather than bend over. (*Id.*)

Stephen Schmidt, vocational expert ("VE") testified after Plaintiff at the hearing. (Doc. 93 at 49) He classified Plaintiff's past relevant—using the *Dictionary of Occupational Titles*[2]—farm worker, DOT 404.687-010, stating this was heavy work with a SVP of 2. (*Id.* at 50)

The ALJ asked the VE to consider "a hypothetical person of the same age, education, language, and work background" as Plaintiff. (Doc. 9-3 at 50) The person "could lift and carry 20 pounds occasionally, 10 pounds frequently; [and] sit, stand or walk six to eight hours." (*Id.*) The VE opined that a person with these limitations could not perform Plaintiff's past work. (*Id.*) However, the VE determined the person could perform work as a packer DOT 920-685-026; cleaner, DOT 323.687-014; and electronics worker, DOT 726.687-014. (*Id.*)

Next, the ALJ asked the VE to consider an individual who could lift and carry 10 pounds occasionally and frequently; sit for six to eight hours; stand or walk two hours; and occasionally stoop, crouch, crawl, climb, and kneel. (Doc. 9-3 at 50) The VE opined such a person would be able to perform sedentary work, such as assembly DOT 726.684-110; inspector, 726.684-050; and bonder, DOT 726.685-066. (*Id.*)

C.   **The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the application date of April 17, 2012. (Doc. 9-3 at 28) At step two, the ALJ found Plaintiff's severe impairments included: "systemic lupus erythematosus with membranous lupus nephritis, morbid obesity, and mild right knee degenerative joint disease." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.*) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to lift and carry 10 pounds occasionally and frequently, sit 6 to 8 hours, and stand and/or walk 2 hours in an 8-hour workday. She can occasionally climb ramps and stairs, ladders, ropes or scaffolds, stoop, kneel, crouch, and crawl.

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 416.966(d)(1).

(*Id.* at 29)  The ALJ noted Plaintiff was "not able to communicate in English, and [was] considered in the same way as an individual who is not literate in English."  (*Id.* at 31)

With these limitations, the ALJ concluded Plaintiff was not able to perform her past relevant work as a farm worker.  (Doc. 9-3 at 31)  However, the ALJ concluded, "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.*)  Consequently, the ALJ found Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 32)

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred in rejecting the opinion of her treating physician, Dr. Boniske. (Doc. 12 at 5-11)  In addition, Plaintiff asserts the ALJ erred at step five of the sequential analysis, by failing to properly address her inability to communicate in English.  (*Id.* at 12-15)  On the other hand, the Commissioner contends the ALJ properly rejected the opinion of Dr. Boniske, and her "decision is free of legal error."  (Doc. 18 at 12; *see also id.* at 5-11)

**A.     ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.*, 81 F.3d at 830.  When there is conflicting medical evidence, "it

is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Here, the opinion of Dr. Boniske was contradicted by Drs. Nasrabadi and Linder, who opined that Plaintiff could perform light work and did not have manipulative, postural, or environmental limitations. Therefore, the ALJ was required to set forth specific and legitimate reasons for rejecting Dr. Boniske's opinion.

Examining the medical evidence, the ALJ summarized the conclusions of Dr. Boniske, and explained the weight given to the opinion as follows:

> I give [Dr.] Boniske's opinion little weight because it is overly restrictive and the medical evidence of record does not support it. For example, treatment records from Dr. Boniske showed the claimant's lupus and renal status overall were stable (Exhibit 8F, p. 4). Additionally, the claimant received conservative treatment, including monitoring and medication adjustments, which better controlled the conditions (Exhibits 3F and 8F).

(Doc. 9-3 at 30) Plaintiff argues these reasons do not support the decision to reject the limitations assessed by Dr. Boniske. (Doc. 12 at 8-11)

### 1. Conflict with medical record

The Ninth Circuit has determined an opinion may be rejected where there are internal inconsistencies within a physician's report. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Further, an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)).

When an ALJ believes a physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849

F.2d 418, 421-22 (9th Cir. 1988).

The ALJ identified a single treatment note in which Dr. Boniske noted that Plaintiff's illnesses were stable. ((*See* Doc. 12-3 at 30, citing Doc. 9-10 at 11) Specifically, Dr. Boniske opined that Plaintiff's lupus was "overall stable," and her "renal status [was] stable and edema… better controlled." (*See* Doc. 12-3 at 30, citing Doc. 9-10 at 11) Significantly, however, the ALJ appears to erroneously equate Plaintiff's stability with functionality. *See Richardson v. Astrue*, 2011 U.S. Dist. LEXIS 132843 at *18-19, 172 Soc. Sec. Rep. Service 69 (C.D. Cal. Nov. 17, 2011).

In *Richardson*, the court observed:

> ALJ Steverson appears to improperly equate stability with functionality. [Citation.] While plaintiff's treating doctors note that plaintiff's lupus is stable, both doctors indicate that plaintiff has an active disease which requires aggressive medications. Significantly, Dr. Levy opined that, "because of [plaintiff's] continued fatigue, joint aches[,] and medication regime[,] regular activities of daily living are quite difficult [for plaintiff]." [Citation.] Similarly, Dr. Starr opined that plaintiff "cannot do any work that requires lifting or standing for long period of time" and "may also be limited by her arthritis." [Citation.] In other words, notwithstanding the stability of plaintiff's lupus, plaintiff's doctors opine that plaintiff will have functional limitations as a result of her lupus, medication regimen, and, possibly, her arthritis.

*Id.* at *18-19. Similarly, here, Dr. Boniske noted Plaintiff suffered from lupus and arthritis, and her symptoms included "severe fatigue," malaise, and joint pain. (*See* Doc. 9-10 at 92-93, 113-14) Although Plaintiff's condition was "stable" and not worsening, there is no indication the record that the stability of her condition rendered her able to perform work for an eight-hour day. Indeed, Dr. Boniske believed Plaintiff had moderate limitations with her activities of daily living, and could only sit, stand, or walk for "less than 2 hours" in an eight hour day. (Doc. 9-10 at 93-94) Thus, the ALJ erred by equating the stability of Plaintiff's condition with her functionality. *See Richardson*, 2011 U.S. Dist. LEXIS 132843 at *18-19.

### 2. Conservative treatment

The ALJ also rejects the opinion of Dr. Boniske because Plaintiff "received conservative treatment." (Doc. 9-3 at 30, citing Exhibits 3F at 8F) In support of this conclusion, the ALJ broadly cites to nearly forty pages of medical records. In doing so, the ALJ fails to identify specific conflicts in the record and to resolve the conflict. *See Allen*, 749 F.2d at 579; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Rather, the ALJ offers only her conclusion the treatment was conservative.

Regardless, the record fails to support the ALJ's conclusion. As Dr. Boniske observed, Plaintiff was on "a very large number" of medications. (Doc. 9-10 at 111) The most recent treatment notes from Dr. Boniske indicate Plaintiff was taking eighteen medications, and several of her prescriptions were to be taken more than once daily. (*See id.* at 109-10) Such a significant number of medications cannot be reasonably described as "conservative treatment." *See Sebestyen v. Astrue* 2011 U.S. Dist. LEXIS 59877 *16 (CD Cal. June 3, 2011) (holding the ALJ erred in finding the claimant received conservative treatment where she had "prescriptions for at least seven medications").

3. Conclusion

The ALJ fails to carry her burden to identify specific evidence in the record that conflicts with the restrictions identified by Dr. Boniske, including Plaintiff's manipulative, postural, and environmental limitations. Because the ALJ did not identify specific and legitimate reasons, the ALJ erred in rejecting the opinion of Dr. Boniske.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to identify legally sufficient reasons for rejecting the limitations assessed by Dr. Boniske.Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence to determine Plaintiff's physical residual functional capacity. *See Moisa* , 367 F.3d at 886.

**CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ erred in assessing the opinion of Plaintiff's treating physician, and the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate for further administrative proceedings, it offers no findings on the remaining issue identified by Plaintiff in his opening brief.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Maria Lule and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 9, 2017**            **/s/ Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE